UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KERRI-ANN JOHNSON,                                          Docket No.:

                           Plaintiff,

            -against-                                        **COMPLAINT**

NV5, INC., NV5 GLOBAL, INC., LINDA REARDON,
KRISTIN PETRICA, ALEXANDER A. HOCKMAN,                       **JURY TRIAL REQUESTED**
and JOHN and JANE DOE (said names being fictitious,
the persons intended being those who aided and abetted
the unlawful conduct of the named Defendants),

                           Defendants.
-------------------------------------------------------------X

  Plaintiff, **KERRI-ANN JOHNSON** ("Plaintiff" or "Johnson"), by her attorneys,

**MADUEGBUNA COOPER LLP,** for her complaint herein against Defendants NV5, Inc. and

NV5 Global, Inc. (collectively, "NV5"), Linda Reardon ("REARDON"), Kristin Petrica

("PETRICA"), and Alexander A. Hockman ("HOCKMAN"), alleges as follows:

### I.   THE NATURE OF THIS ACTION

  1.   In the United States, 74% of employers are racially biased against Blacks.

Additionally, many employers openly admit to discriminating against Blacks, with hiring audits

determining that when Blacks and whites have the same credentials, whites receive the position

at a rate of 3:1.[1]

  2.   More importantly, Blacks earn lower wages than whites working in the same

industry.[2] Overall, average wages for Black workers were 26.7% lower than those for white

workers in 2015.

---

[1] Major G. Coleman, "Job Skill and Black Male Wage Discrimination," *Social Science Quarterly*. 84 (4): 892 – 906 (2003), Doi: 10.1046/j.0038-4941.2003.08404007
[2] *Id.*

3.      By the mid-1970s, wages for Black and white women were almost equal; however, since then, Black women's wages have decreased about 10% relative to white women's wages.[3]

4.      In fact, Black women are now paid 21% less than white women.[4]

5.      The above statistics are even worse for Black women not born in the United States.

6.      Against this backdrop, the experience of Johnson, a Black woman of West Indian ancestry and Jamaican national origin, at the hands of Defendants is a prime example of the bitter and enduring truth for the Black woman in the workplace: she is supposed to earn less and is in fact paid less than similarly situated non-Blacks in the same position for doing the same work.

7.      In May 2015, Johnson accepted an Administrative Assistant position with The RBA Group, now NV5, an engineering and consulting firm providing professional and technical engineering and consulting services to public and private sector clients in the infrastructure, energy, construction, real estate and environmental markets in the United States and internationally.

8.      Johnson accepted the position after years of experience holding administrative positions, and due to being promised in her job interview with REARDON and David Lapping ("Lapping"), former President of The RBA Group, that she would be placed on a career path that

---

[3] Council of Economic Advisers for the President's Initiative on Race, "Economic Report of the President: Changing America Indicators of Social and Economic Well-Being by Race and Hispanic Origin," *GPO Access*, 2009, archived from the original on 2012-01-28.

[4] Hegewisch, Arine. "The Gender Wage Gap: 2017; Earnings Differences by Gender, Race, and Ethnicity," Institute for Women's Policy Research. Accessed August 20, 2019, available at https://iwpr.org/publiciations/gender-wage-gap-2017/.

after some time would move her from handling administrative functions to higher paying marketing positions.

9.     Despite Johnson's exceedingly good qualifications, she was offered and accepted a starting salary of $45,000.00 for the Administrative Assistant position.

10.     However, unbeknownst to Johnson, both in 2014 and 2016, two white women, Alicia Petrulis ("Petrulis") and Cassandra Hohn ("Hohn"), both born in the United States, but with less experience than Johnson, were hired by Defendants to the same Administrative Assistant position, for the same work but each at a starting salary of $60,000.00, that is, over 21% more than what Johnson was offered.

11.     There is no justification for this gross disparity other than salary discrimination on account of race, color, ancestry and national origin.

12.     Worse, not only did Defendants pay Johnson less for the same work as the two white employees, but since 2015 Johnson has been denied the promised advancement to a marketing career.

13.     Indeed, whenever Johnson expressed interest in a marketing position, REARDON said such position would be too complex for her, an obvious indication that to Defendants, as a Black person, such relatively unexceptional marketing work was beyond Johnson's abilities.

14.     Instead, while Petrulis and Hohn, the two white female employees hired in the same position as Johnson, continue to be advanced in their careers by Defendants, placing them in higher Marketing and other positions and paying them more, Johnson, despite her steady solid performance, continues to be denied career advancement and salary increases, for reasons that point to her race, color, ancestry and national origin.

- 3 -

15.     As fate would have it, however, in July 2020, after Johnson had requested and been denied a salary increase by REARDON, Johnson was accidentally copied onto a July 2020 email chain by REARDON concerning Defendants giving yet another merit increase to Hohn, and in which REARDON, to the knowledge of PETRICA, openly admitted she did not want Johnson to know of the increase to this white employee.

16.     But for Defendants' blunder and failed cover-up, Johnson would not have been aware that for years she has not only been paid less but that she had been hired at a significantly lower salary than Petrulis and Hohn, and therefore treated less well because of her race, color, ancestry and national origin.

17.     As a direct result of these sobering statistics and her own unfortunate personal and pointed circumstance, Johnson brings this action for declaratory judgment and money damages to remedy discrimination on the basis of race, color, ancestry and national origin in the terms, conditions and privileges of her employment pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Section 1981"); the New York Human Rights Law as contained in New York State Executive Law, § 296 *et seq.* ("NYSHRL"); and New York City Human Rights Law as contained in the Administrative Code of the City of New York, § 8-107 *et seq.* ("NYCHRL").[5]

**II.     JURISDICTION AND VENUE**

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

19.     This Court has supplemental jurisdiction over the state causes of action pleaded herein.

---

[5] Charges of discrimination have been filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e *et seq.* Plaintiff plans on amending her Complaint to add this cause of action once the EEOC provides her with a right to sue letter.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

### III.     PROCEDURAL REQUIREMENTS

21.     Immediately after commencing this action, Johnson will serve a copy of the complaint on the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

### IV.     PARTIES

22.     Johnson is a 34 year-old Black woman.

23.     Johnson, who is of West Indian ancestry[6] and Jamaican national origin[7], presents and speaks with marked Jamaican ethnic and linguistic characteristics, behavior and mannerism.

24.     Johnson has been continuously employed by NV5 since May 26, 2015.

25.     At all relevant times, Johnson was a resident of the City and State of New York.

26.     NV5 is a foreign corporation organized and existing under the laws of the State of New Jersey, and its corporate headquarters is located at 200 South Park Road, Suite 350, Hollywood, Florida 33021.

27.     NV5 is authorized to do business under the laws of the State of New York, and its New York office is located at 32 Old Slip, Suite 401, New York, New York 10005 (the "New York office").

28.     NV5 also operates an office on Long Island located at 40 Marcus Drive, Suite 201, Melville, New York 11747 (the "Melville office").

---

[6] "Based on longstanding Supreme Court and Second Circuit precedent, we reiterate that 'race' includes ethnicity for purposes of § 1981..." *Village of Freeport v. Barrella*, 814 F.3d 594, 608 (2d Cir. 2016).

[7] Plaintiff may premise a Section 1981 claim on West Indian ancestry and ethnicity. *Emmons v. City University of New York*, 715 F.Supp.2d 394, 415 (E.D.N.Y. 2010).

29.     At all relevant times, REARDON was (and is) a Senior Vice President of NV5, working in the New York office.

30.     As Senior Vice President, REARDON reports directly to NV5 President HOCKMAN, and is Johnson's immediate supervisor.

31.     At all relevant times, REARDON approves and denies all pay increases, job applications, promotions and trainings for all NV5 employees in the North East region, including the New York and Melville offices, such as Johnson, Petrulis and Hohn.

32.     REARDON is a white female of Irish national origin.

33.     At all relevant times, Defendant PETRICA was (and is) a Human Resources Manager in NV5's corporate headquarters in Hollywood, Florida.

34.     PETRICA is a white female, of non-Jamaican or West Indian national origin and ancestry.

35.     At all relevant times, HOCKMAN was (and is) the President of NV5 in NV5's corporate headquarters in Hollywood, Florida.

36.     HOCKMAN is a white male, of non-Jamaican or West Indian national origin and ancestry.

## V.     EEO RESPONSIBILITIES OF THE INDIVIDUAL DEFENDANTS

37.     At all relevant times, HOCKMAN approves all salary increases at NV5, including employees in the New York and Melville offices of NV5, such as Johnson, Petrulis and Hohn.

38.     At all relevant times, HOCKMAN was also responsible for making sure employees like Plaintiff are equitably paid and that salary determinations are not based on race, color, ancestry and national origin.

39.     At all relevant times, REARDON, PETRICA and HOCKMAN were responsible for and made personnel decisions on behalf of NV5, including the decisions not to promote Johnson to a marketing position or provide her with salary increases.

40.     As such, during the relevant time, each Defendant had policymaking authority and was charged with ensuring that employees of NV5 were not subjected to discrimination on the basis of race, color, ancestry or national origin.

## VI.     EEO POLICY OF DEFENDANT NV5

41.     NV5 claims it is "committed both to a policy of equal employment opportunity for qualified applicants and employees and to providing a work environment that is free from discrimination, harassment and retaliation."

42.     NV5's policy is to "hire, employ, train, retain, promote, demote, compensate, discipline, terminate and otherwise treat all employees and job applicants on the basis of merit, qualifications and competence, and without regard to sex, sexual orientation or preference, gender, race, color, religion, national origin."[8] (Emphasis supplied)

43.     NV5 "believes that true equal employment opportunity cannot be accomplished if discrimination, harassment or retaliation on the basis of sex, sexual orientation or preference, gender, age, color, creed, citizenship status, marital status, disability, national origin, race, or any other legally protected characteristic is tolerated."[9]

44.     "All NV5 employees are responsible for ensuring that the NV5 workplace is free from discrimination, harassment and retaliation."[10]

---

[8]Section 100.2, NV5, Equal Employment Opportunity (EEO) Policy at pg.9
[9] *Id.*
[10] *Id.*

45.     Accordingly, it is "the responsibility of each employee to ensure that discrimination on any of these bases or that prohibited harassment does not occur within the workplace."[11]

46.     NV5 requires that "Employees who believe that any kind of illegal discrimination, harassment or retaliation is occurring, are required to immediately report the fact of the incident(s) and the name(s) of the part(y/ies) involved to a supervisor or manager, the director of employee relations and/or the director of human resources. They may also contact the CEO of NV5 concerning such issues."

## VII.    VIOLATION OF OBLIGATIONS UNDER NV5 EEO POLICY

47.     At all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff.

48.     At all relevant times, Defendants violated NV5 EEO Policy and NV5's obligation to a policy of equal employment opportunity for all employees.

## VIII.   FACTS COMMON TO ALL CAUSES OF ACTION

*Johnson's Background and Qualifications:*

49.     Johnson's relevant work experience began in 2006.

50.     Between 2006-2010, she managed clerical and administrative personnel, assisted with interviews and new hires and trained and supervised employees while working as an Administrative Assistant for over four (4) years at Gaynair & Fraser, a law firm in Jamaica, W.I.

51.     Johnson also received her Associate Degree in Business Administration in 2007 while working full-time.

52.     Between 2010 and 2011, Johnson was hired as an administrative assistant by the Attorney General of Jamaica, W.I., where she gained additional training and acquired a

---

[11] *Id.*

Certificate in Administrative Management from the reputable Management Institute for National Development in Jamaica, W.I.

53.     When Johnson emigrated from Jamaica to the United States in 2011, she began working as a Convention Assistant for Bedford Freeman & Worth Publishing Group in New York, where she created and assembled marketing materials for conventions and managed and maintained product and data information within company systems.

54.     In April 2013, Johnson became an Administrative Consultant with XL Real Property Management, assisting in gathering information on property taxes and creating and maintaining an effective and efficient filing system.

55.     In November 2013, Johnson began working as an Accountant Consultant with HFZ Capital Group, where she assisted the Chief Financial Officer and Controllers in analyzing financial statements and preparing financial statements and created ad hoc accounting reports.

*Johnson is Promised Career Advancement and Begins Working with NV5 in May 2015:*

56.     In or around May 2015, Johnson interviewed with REARDON and Lapping for an Administrative Assistant position with The RBA Group, which was purchased by NV5 the following year.

57.     During the interview, REARDON and Lapping promised Johnson that after working as an Administrative Assistant, Johnson would have the opportunity to move into a marketing position.

58.     In light of REARDON's promise, in May 2015, Johnson accepted the Administrative Assistant position, working directly for REARDON at an annual salary of $45,000.00.

59.     In this position, Johnson became responsible for coordinating new hire orientations and terminations, requesting insurance certificates for new and existing contracts, collecting field and office timesheets, reconciling staff and company credit card expenses, providing weekly support to payroll and billing department, coordinating meetings and events by arranging for food and entertainment, distributing office memorandums and attending routine meetings with NV5's property management office.

60.     Since 2018, Johnson has also assisted Human Resources with handling status change forms, including salary increases, promotions and transfers.

61.     At all relevant times, Johnson performed her duties in a satisfactory manner, has earned positive annual performance evaluations for each year of her employment with NV5 and never received any complaints about her work.

62.     Despite her excellent work performance, Johnson has not received any promotions or significant salary increase since 2015.

*Johnson has been Treated Less Well than White Colleagues Performing Similar Work in Substantially Equal Positions (Background)*:

63.     At all relevant times, NV5 employs sixty (60) staff in the New York office, of which only three (3) employees, including Johnson, are Black.

64.     Shortly after Johnson arrived at The RBA Group, now NV5, in or around June 2015, she was asked by REARDON to record a company voicemail greeting for the North East Offices and given a script to read.

65.     Johnson recorded the greeting with the technical assistance of Glenn Pearson, a Black Information Technology employee, and the greeting was placed on NV5's telephone system.

66.     However, several weeks later, in or around July 2015, Johnson discovered that the recording with her voice had been replaced by the voice of Petrulis, a white female of U.S. national origin, who had been hired by REARDON in 2014 as an Administrative Assistant for the Melville office.

67.     Johnson's voicemail greeting was discriminatorily deleted on account of her marked Jamaican ethnic and linguistic characteristics.

68.     To date, Petrulis' recording is still used as NV5's North East company voicemail greeting.

*Johnson has Continually Expressed Interest in her Promised Marketing Position and Proposed Improvements to the Office*:

69.     Although REARDON promised Johnson a career in marketing during her initial interview, to date, REARDON has failed and refused to promote Johnson from her Administrative Assistant position, due to Johnson's race, color, ancestry and national origin.

70.     As such, Johnson has been forced to continually express interest in the marketing career promised by REARDON, and has requested additional training to meet this goal.

71.     Although Johnson has continued to discuss her interests with REARDON, including in annual performance meetings, REARDON has discriminatorily told Johnson that marketing is too complex for her and discouraged her from pursuing such opportunities.

72.     REARDON'S statement to Johnson that marketing work is too complex is an obvious reference to her discriminatory belief that Johnson cannot handle such work, and REARDON's unwillingness to even offer training for Johnson to learn.

73.     On the contrary, REARDON has not only moved Petrulis into the Marketing Department, but has, with the assistance and approval of PETRICA and HOCKMAN, rocketed

Petrulis up the career ladder at NV5, increasing her salary to over $95,000.00 in less than five (5) years of employment with NV5.

74.     In addition, in or around 2010, REARDON promoted another non-black employee from Administrative Assistant to a Marketing position in the New York office, the same path promised to Johnson.

75.     In her 2017 performance evaluation, Johnson wrote in her Employee Overall Comments that she "would love to engage in more training sessions," and asked to assist in more marketing tasks.

76.     However, REARDON never arranged for Johnson to receive the training, while white employees doing the same work in substantially equal positions, including Petrulis, were permitted to train and achieve promotional opportunities.

77.     On June 21, 2018, Johnson contacted HOCKMAN following a roundtable discussion with the New York office and said she "would love to assist the marketing department with putting together proposals," but lacked proper training and would like an opportunity to obtain such training.

78.     In his June 23, 2018 response, HOCKMAN told Johnson that a discussion on upward mobility should be a topic during her annual review and otherwise did not attempt to assist her.

79.     Johnson has also taken initiative to improve NV5's working environment and boost morale, and proposed a number of ideas that were shot down by REARDON and PETRICA.

80.     For example, at the beginning of Johnson's employment, she immediately implemented a spirited weekly timesheet reminder, boosting timesheet submission to 97%, a problem that had plagued NV5 for years.

81.     In November and December of 2016, Johnson, with the use of innovative flyers and invites, boosted attendance and participation in NV5's yearly Potluck and Christmas party, both of which increased attendance to 94% and 80%, respectively.

82.     In August 2018, Johnson also created and implemented a new-hire onboarding welcome announcement email, which received rave reviews from managers, directors and other employees.

83.      Again, in August 2018, Johnson proposed a recognition reward system for employees; however, in order to have her idea seriously considered, Johnson was forced to loop in white employees of the New York office's Marketing Department to present it.

84.     Despite her innovative idea, REARDON discriminatorily told Johnson to stick to administrative tasks, again due to her discriminatory belief that Johnson, because of her race and ethnic background, is not capable of handling work any more advanced.

85.     Not discouraged, once again in 2019, in order to have her idea successfully implemented, Johnson, with the help of two others, proposed and implemented an interactive program called "Unplugged To Connect," a fifteen minute break-out session geared towards sharing in the experience of coworkers. Several employees expressed admiration for the session.

86.     In March 2020, after several employees expressed concerns about protecting themselves from COVID-19, Johnson sent a draft memorandum to REARDON to provide the office with Centers for Disease Control and Prevention ("CDC") guidelines and company assurances.

87.     Upon receipt of the draft memorandum, in obvious denigration, REARDON asked Johnson, "Where did you get the narrative?" and did not permit Johnson to send the CDC guidelines to the New York office.

*Johnson Requests but is Denied a Salary Increase in March 2020:*

88.     As a result of her high performance and dedication to improving NV5's work environment, in March 2020, Johnson requested a salary increase.

89.     Johnson's request was during her annual performance review with REARDON in March 2020, where Johnson specifically requested that she be awarded a merit increase as a result of her five years of exemplary service.

90.     REARDON did not meaningfully address Johnson's request, falsely suggesting that there was a freeze on salary increases, when in fact salary increases were granted to similarly situated whites, such as Hohn.

91.     As a result, Johnson's request for salary increase were either discriminatorily denied by REARDON or ignored.

*Johnson Learns that Hohn, a White Employee Performing the Same Work in a Substantially Equal Position, Will Receive a Salary Increase:*

92.     On July 13, 2020, REARDON began an email chain to Stephen Normandin, the Managing Director of NV5's Melville office, concerning salary increases for a number of his employees.

93.     All such increases had previously been approved by REARDON and HOCKMAN.

94.     In one of the emails in the thread, REARDON wrote to Mr. Normandin that "I'd rather [Johnson] didn't see that [Hohn] is getting a raise."

95. At the time, Hohn, a white female, was performing substantially similar work as Johnson, in the position of Administrative Coordinator in the Melville office, since August 2016, over one year after Johnson was hired by NV5.

96. REARDON's discriminatory statement about hiding Hohn's salary increase was in direct response to Johnson's request during her annual performance review in March 2020 that she receive a salary increase.

97. REARDON knew that the salary increase to Hohn, a white employee of U.S. national origin, was discriminatory.

98. On July 15, 2020, REARDON accidentally forwarded the full email chain to Johnson, with a request that Johnson handle other assignments without processing the salary increase for Hohn, as she would then know of the increase.

99. REARDON copied PETRICA onto the email chain, but PETRICA did not object or otherwise oppose REARDON's discriminatory statement about hiding a white employee's salary increase from a Black employee whose request for a salary increase had just been denied by REARDON.

*Johnson Discovers that she Began her Employment with The RBA Group, now NV5, at a Lower Salary than Petrulis and Hohn:*

100. Upon receipt of the July 15, 2020 email, Johnson became concerned about her salary and pay.

101. After further investigation, on July 20, 2020, Johnson learned that when she was hired in May 2015 by REARDON, her starting salary of $45,000.00 was at least $15,000.00 less than the starting salaries offered by REARDON to Petrulis and Hohn, her white comparators for the same position.

102.    Johnson's investigation also revealed that not only had Petrulis been offered a starting annual salary of $60,000.00 in 2014, but that since then, Petrulis has received four merit increases and two promotions within the New York office, first to Marketing Coordinator and then to Director of Marketing in November 2018.

103.    Johnson's investigation also showed that, upon Hohn's hiring in August 2016 by REARDON, she received a starting annual salary of $59,991.36, as well as substantial merit increases otherwise denied to Johnson.

104.    At the time of their hiring at The RBA Group, now NV5, Hohn and Petrulis, like Johnson, had bachelor's degrees, but Johnson had significantly more experience than both in administrative duties and as an office manager.

105.    Since May 2015, Johnson has only received the standard NV5 annual increase of .03%.

106.    On July 23, 2020, after discovering that Hohn and Petrulis received higher starting salaries, Johnson emailed REARDON to follow-up on her March 2020 request for a merit increase.

107.    In response to Johnson's July 23, 2020 email, despite the fact of Hohn receiving a salary increase, REARDON claimed that "all merit increases are on hold in the NYC office" on account of "very hard times for our office" due to COVID-19.

108.    Defendants conspired and or aided and abetted each other in unlawful employment practices and did so in callous disregard of Johnson's rights.

109.    As a proximate result of Defendants' discriminatory conduct towards Johnson, Johnson has suffered and continues to suffer significant monetary loss and damages.

110.    As a further proximate result of Defendants' actions, Johnson has suffered and continues to suffer from severe emotional distress, embarrassment, humiliation, and anguish, as well as other incidental and consequential damages and expenses.

111.    Defendants' conduct is outrageous and malicious, was intended to injure Johnson, and was carried out with reckless indifference to Johnson's protected civil rights, thereby entitling her to punitive damages.

112.    Johnson has no complete, plain, clear, or adequate remedy at law.

113.    Defendants must be restrained from further retaliation and discrimination against Johnson and directed to cease and desist from their unlawful acts against Johnson.

114.    The acts of the Defendants against Johnson continue.

115.    Johnson believes that the Defendants' unlawful acts against her will continue until this Court, by injunction and/or its judgment, compels otherwise.

## FIRST COUNT AGAINST ALL DEFENDANTS
### (Race and Ancestry Discrimination under Section 1981)

116.    Johnson hereby repeats and realleges each allegation in each numbered paragraph above.

117.    Defendants subjected Johnson to differential terms and conditions of employment because of her race and ancestry.

118.    Specifically, Defendants subjected Johnson to the following adverse actions because of her race and ancestry:

      a.    She was paid less than similarly situated non-Blacks in the same position doing the same work;

      b.    She was denied salary parity with white employees doing similar work in substantially equal positions;

- 17 -

    c.      She was denied advancement to higher positions, including positions in Marketing; and,

    d.      She was denied merit salary increases, despite her good performance.

119.    Defendants took the foregoing actions in order to deprive Johnson of equal employment opportunities and other contractual opportunities on account of her race and ancestry.

120.    Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Johnson has been denied her right to equal employment opportunity in violation of Section 1981.

121.    By reason of the foregoing, Johnson has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SECOND COUNT AGAINST ALL DEFENDANTS**
**(Race, Color, Ancestry and National Origin Discrimination**
**in Violation of the NYSHRL)**

122.    Johnson hereby repeats and realleges each allegation in each numbered paragraph above.

123.    At all relevant times, Johnson was an "employee" within the meaning of the NYSHRL.

124.    By adversely affecting the terms, conditions and privileges of Johnson's employment because of her race, color, ancestry and national origin, Defendants violated the NYSHRL.

125.    By reason of the foregoing, Johnson has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**THIRD COUNT AGAINST ALL DEFENDANTS**
**(Race, Color, Ancestry and National Origin Discrimination**
**in Violation of the NYCHRL)**

126.    Johnson hereby repeats and realleges each allegation in each numbered paragraph above.

127.    At all relevant times, Johnson was an "employee" within the meaning of the NYCHRL.

128.    By adversely affecting the terms, conditions and privileges of Johnson's employment because of her race, color, ancestry and national origin, Defendants violated the NYCHRL.

129.    By reason of the foregoing, Johnson has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**VICARIOUS LIABILITY**

130.    At all relevant times, NV5 is vicariously liable for the actions of the individual Defendants.

**PUNITIVE DAMAGES**

131.    Plaintiff claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the individual Defendants herein-above alleged.

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a.    Impanel a jury to hear Plaintiff's claims;

b.    Grant Plaintiff preliminary and permanent injunctions prohibiting Defendants, their agents, successors, employees, and those acting in concert with them and at their direction, from engaging in any of the practices set

forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of race, color, ancestry and national origin with respect to compensation, terms, conditions, and privileges of employment, or from continuing or maintaining a policy, practice, custom, or usage of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the rights of Plaintiff to enjoy equal employment opportunities secured by law;

c.      Establish an imposed oversight and monitoring of the activities of Defendants to prevent future acts of retaliation;

d.      Establish a mechanism for the enforcement of the injunctions by requiring Defendants to present to the Court within thirty days of the issuance of the injunction a plan showing precisely and in detail how they will comply with the Court's order, and how they plan to cease and desist from policies, practices, customs, and usages of discrimination against Plaintiff and other persons similarly situated;

e.      An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits;

f.      An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

g.   An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for violations of her rights under Section 1981, the NYSHRL and the NYCHRL;

h.   An award of punitive damages to be determined at the time of trial for each cause of action;

i.   An award of reasonable attorney's fees and costs related to Plaintiff's claims under Section 1981, the NYSHRL and the NYCHRL; and

j.   Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 9, 2020

Respectfully Submitted,

SAMUEL O. MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff,
KERRI-ANN JOHNSON
30 Wall Street, 8th Floor
New York, New York 10005
(212) 232-0155

TO:   DEFENDANTS

NV5, INC.
200 South Park Road, Suite 350
Hollywood, Florida 33021

NV5 GLOBAL, INC.
200 South Park Road, Suite 350
Hollywood, Florida 33021

LINDA REARDON
c/o NV5, Inc.
32 Old Slip, Suite 401
New York, New York 10005

- 21 -

KRISTIN PETRICA
c/o NV5, Inc.
200 South Park Road, Suite 350
Hollywood, Florida 33021

ALEXANDER A. HOCKMAN
c/o NV5, Inc.
200 South Park Road, Suite 350
Hollywood, Florida 33021

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*
-----------------------------------------------------------------------------------------------------------
*KERRI-ANN JOHNSON,*

                              *Plaintiff,*


            *-against-*


*NV5, INC., NV5 GLOBAL, INC., LINDA REARDON, KRISTIN PETRICA, ALEXANDER*
*A. HOCKMAN and JOHN and JANE DOE (said names being fictitious, the persons intended*
*being those who aided and abetted the unlawful conduct of the named Defendants),*

                              *Defendants.*
-----------------------------------------------------------------------------------------------------------

                    *COMPLAINT AND JURY DEMAND*

-----------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*
_____

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

_____

                         *Yours, etc.*

                  *MADUEGBUNA COOPER LLP*
                    *Attorneys for Plaintiff*
                  *30 Wall Street, 8th Floor*
                 *New York, New York 10005*
                      *(212) 232- 0155*


*To: All Counsel of Record*
_____
*Service of the within is hereby admitted on*
_____

*Attorneys for*